# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICA FIRST LEGAL FOUNDATION, ) ) ) ) *Plaintiff,* ) ) v. ) ) U.S. DEPARTMENT OF ENERGY, ) ) *Defendant.* ) ) | Civil Action No. 22-1888 (RDM) |

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR
# ATTORNEYS' FEES AND COSTS

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................ 1

STANDARD OF REVIEW ...................................................................................... 4

ARGUMENT ............................................................................................................ 4

  I.  Plaintiff is Eligible to Recover Fees and Costs Because it Substantially
     Prevailed in this Litigation. ...................................................................... 5

  II. Plaintiff is Also Entitled to Fees and Costs Because the Four-Factor
     Test Clearly Favors Recovery. ................................................................. 8

     A.  The public received substantial benefit through this case. .......................... 8

     B.  Because Plaintiff sought the records to inform the public, it did not
        derive any commercial benefit from this FOIA request or lawsuit. ............ 9

     C.  Energy's conduct was unreasonable. ......................................................... 11

  III. Plaintiff's Requested Fee Award is Reasonable. ................................... 11

     A.  Plaintiff's requested fees for work on this case are reasonable. ................. 11

     B.  Plaintiff is entitled to fees on fees. .......................................................... 18

CONCLUSION ...................................................................................................... 18

## TABLE OF AUTHORITIES

### Cases

*Am. Civil Liberties Union v. Dep't of Homeland Sec.*,
  810 F. Supp. 2d 267 (D.D.C. 2011) ........................................................ 15

*Am. Lands All. v. Norton*,
  525 F. Supp. 2d 135 (D.D.C. 2007) ........................................................ 15

*Am. Oversight v. U.S. Dep't of Just.*,
  375 F. Supp. 3d 50 (D.D.C. 2019) .......................................................... 5

*Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*,
  136 F.3d 794 (D.C. Cir. 1998) ............................................................... 12

*Berke v. Fed. Bureau of Prisons*,
  942 F. Supp. 2d 71 (D.D.C. 2013) .......................................................... 14

*Blum v. Stenson*,
  465 U.S. 886 (1984) ................................................................................ 12

*Brackett v. Mayorkas,*
No. 17-cv-0988-JEB, 2023 WL 5094872 (D.D.C. Aug. 9, 2023) .............................. 13

*Brayton v. Off. of the U.S. Trade Rep.,*
641 F.3d 521 (D.C. Cir. 2011) ................................................................................... 5

*Brennan Ctr. for Just. v. Dep't of Homeland Sec.,*
No. 16-cv-1609-ABJ, 2019 WL 280954 (D.D.C. Jan. 22, 2019) .............................. 18

*Church of Scientology of Cal. v. Harris,*
653 F.2d 584 (D.C. Cir. 1981) ................................................................................... 5

*Citizens for Resp. & Ethics in Wash. v. Dep't of Just.,*
No. 12-cv-1491-JDB (D.D.C. May 1, 2015) .............................................................. 14

*Cotton v. Heyman,*
63 F.3d 1115 (D.C. Cir. 1995) ................................................................................... 9

*Covington v. District of Columbia,*
57 F.3d 1101 (D.C. Cir. 1995) .......................................................................... 12, 15

*Crooker v. U.S. Dep't of Treasury,*
663 F.2d 140 (D.C. Cir. 1980) ................................................................................... 7

*Davy v. Cent. Intel. Agency,*
550 F.3d 1155 (D.C. Cir. 2008) ................................................................................ 11

*Edmonds v. Fed. Bureau of Investigation,*
417 F.3d 1319 (D.C. Cir. 2005) ................................................................................. 4

*Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.,*
999 F. Supp 2d 61 (D.D.C. 2013) ............................................................................. 16

*Elec. Privacy Info. Ctr. v. Fed. Bureau of Investigation,*
72 F. Supp. 3d 338 (D.D.C. 2014) ..................................................................... 10, 16

*Elec. Privacy Info. Ctr. v. Fed. Bureau of Investigation,*
80 F. Supp. 3d 149 (D.D.C. 2015) ..................................................................... 16, 18

*Elec. Privacy Info. Ctr. v. Internal Rev. Serv.,*
No. 18-cv-0902-TJK/GMH, 2023 WL 4892712 (D.D.C. June 2, 2023) ................... 13

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.,*
218 F. Supp. 3d 27 (D.D.C. 2016) ............................................................................. 6

*Env't Integrity Proj. v. Gen. Servs. Admin.,*
No. 18-cv-0042-KBJ, 2021 WL 3464337 (D.D.C. Aug. 6, 2021) .............................. 6

*Farrar v. Hobby,*
506 U.S. 103 (1992) ................................................................................................... 4

*Hall & Assoc. v. U.S. Env't Prot. Agency,*
No. 15-cv-286-RBW, 2016 WL 10746643 (D.D.C. Mar. 7, 2016) ........................... 16

*J.T. v. District of Columbia*,
  Nos. 19-cv-0989-BAH & 22-cv-0091-BAH, 2023 WL 355940
  (D.D.C. Jan. 23, 2023) ............................................................................... 13

*Jud. Watch, Inc. v. Dep't of Just.*,
  774 F. Supp. 2d 225 (D.D.C. 2011) ......................................................... 12

*Kwoka v. Internal Revenue Serv.*,
  989 F.3d 1058 (D.C. Cir. 2021) ................................................................ 11

*LaSalle Extension Univ. v. Fed. Trade Comm'n*,
  627 F.2d 481 (D.C. Cir. 1980) .................................................................. 11

*Louise Trauma Ctr. LLC v. Dep't of Homeland Sec.*,
  No. 20-cv-1128, 2023 WL 3478479 (D.D.C. May 16, 2023) .................... 13

*Mobley v. Dep't of Homeland Sec.*,
  908 F. Supp. 2d 42 (D.D.C. 2012) ........................................................ 5, 8

*Morley v. Cent. Intel. Agency*,
  719 F.3d 689 (D.C. Cir. 2013) .......................................................... 4, 8, 11

*Morley v. Cent. Intel. Agency*,
  810 F.3d 841 (D.C. Cir. 2016) .................................................................... 8

*Morley v. Cent. Intel. Agency*,
  894 F.3d 389 (D.C. Cir. 2018) .................................................................... 9

*Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*,
  675 F.2d 1319 (D.C. Cir. 1982) ............................................................... 15

*Nat'l Sec. Couns. v. Cent. Intel. Agency*,
  189 F. Supp. 3d 73 (D.D.C. 2016) ............................................................. 5

*Nat'l Veterans Legal Servs. Prog. v. United States*,
  No. 16-cv-0745-PLF (D.D.C. Sept. 12, 2023) ......................................... 14

*Naumes v. Dep't of the Army*,
  No. 21-cv-1670-JEB, 2023 WL 4350786 (July 5, 2023) ......................... 13

*Pub. Law Educ. Inst. v. U.S. Dep't of Just.*,
  744 F.2d 181 (D.C. Cir. 1984) .................................................................... 6

*Reyes v. U.S. Nat'l Archives & Records Admin.*,
  356 F. Supp. 3d 155 (D.D.C. 2018) ......................................................... 16

*Salazar v. District of Columbia*,
  809 F.3d 58 (D.C. Cir. 2015) .................................................................... 12

*Tax Analysts v. Dep't of Just.*,
  965 F.2d 1092 (D.C. Cir. 1992) ................................................................ 11

*Terris, Pravlik & Milian, LLP v. Ctr. for Medicare & Medicaid Servs.*,
  794 F. Supp. 2d 29 (D.D.C. 2011) ............................................................. 7

*Vollman v. Dep't of Just.*,
No. 12-cv-0939-FYP (D.D.C. Jan. 26, 2022) .......................................................... 14

*Vollmann v. Dep't of Just.*,
No. 12-cv-0939-FYP, 2022 WL 1124814 (D.D.C. Apr. 14, 2022) ..................... 13, 14

*Wadelton v. Dep't of State*,
No. 13-cv-0412-TSC, 2018 WL 4705793 (D.D.C. Sept. 30, 2018) .......................... 9

*Weisberg v. U.S. Dep't of Just.*,
745 F.2d 1476 (D.C. Cir. 1984) ............................................................................... 6

*WP Co., LLC v. Dep't of Homeland Sec.*,
No. 20-cv-1487-TNM (D.D.C. Oct. 25, 2022) ....................................................... 14

*WP Co., LLC v. Dep't of Homeland Sec.*,
No. 20-cv-1487-TNM, 2023 WL 1778196 (D.D.C. Feb. 6, 2023) .......................... 14

*Zynovieva v. U.S. Dep't of State*,
No. 19-cv-3445-RDM, 2023 WL 2755599 (D.D.C. Mar. 31, 2023) ......................... 6

**Statutes**

5 U.S.C. § 552 .................................................................................................................... 4, 5

**Other Authorities**

153 Cong. Rec. S15704 (daily ed. Dec. 14, 2007) ............................................................. 7

Adam Shaw, *American First Legal launches 'Woke Wagon' database to reveal
ties of Biden admin officials,* Fox News (July 20, 2022) ........................................... 9

*Joe Biden Has Picked 426 Nominees to Fill Key Roles in His Administration
So Far*, Wash. Post (updated Nov. 20, 2023) ........................................................... 9

Kelsey Koberg, *Database reveals Biden Department of Education's ties to
campaigns, unions and liberal think tanks,* Fox News (Aug. 1, 2022) .................... 9

Nancy Vu, *John Barrasso Requests Ethics Review Into DOE Official Over
Conflicts of Interest Allegations*, Wash. Examiner (Nov. 9, 2023) ......................... 9

Naveen Athrappully, *Legal Group Sues Justice Department for Documents
Related to Political Weaponization,* The Epoch Times (Apr. 25, 2023) ................... 9

Patrick Hauf, *Biden political appointees to HIV council have 'woke' pasts
tied to drag queen story hour, Planned Parenthood*, Fox News
(Dec. 19, 2022) ........................................................................................................ 9

*Search: Department of Energy,* Woke Wagon ............................................................. 10

Susan Milligan, *Biden Gets the Obama Band Back Together*, U.S. News &
World Report (Dec. 11, 2020) .................................................................................. 9

In this Freedom of Information Act ("FOIA") case, Plaintiff America First Legal Foundation submitted a FOIA request to Defendant Department of Energy ("Energy") nearly a year before Plaintiff filed this lawsuit. However, Energy failed to respond to that request until Plaintiff filed this lawsuit. In doing so, all evidence points to this lawsuit as the reason Energy finally responded to the FOIA request. Additionally, even after Energy responded to the request, it changed positions mid-litigation when it determined that it would remove various redactions. Accordingly, Plaintiff substantially prevailed in this litigation and is eligible for attorneys' fees and costs.

Plaintiff is also entitled to fees and costs because each part of the test for determining entitlement in this Circuit favors Plaintiff. Indeed, the record demonstrates that Plaintiff provided substantial public benefit through this request, and Energy's positions were not reasonable.

Finally, because Plaintiff seeks fees for reasonable time spent litigating this case, the Court should award Plaintiff $19,228.37 in fees and costs.

## BACKGROUND

On July 15, 2021, Plaintiff submitted a FOIA request to Energy. *See* Compl., Ex. A (ECF No. 1-1). That request sought records about political appointees working at Energy. *See id.* at 2–4. For instance, Plaintiff's request sought records identifying political appointees who entered Energy from outside the Department, as well as political appointees who were previously serving as career employees. *See id.* at 2–3. Additionally, for each such individual, Plaintiff sought copies of their resumes, various authorizations, ethics pledges, and other similar records. *See id.*

As Plaintiff explained, it sought these records based in part on the Biden Administration's commitment to transparency, openness, and ethics. *Id.* at 5. In light of those commitments, Plaintiff explained that the public had a "significant interest in understanding the qualifications of the individuals selected to lead the Department and implement the Administration's policies and priorities." *Id.* Similarly, Plaintiff explained that the "public also has a significant interest in ensuring that government decisions are not influenced by improper conflicts of interest or other unethical conduct." *Id.*

Days after Plaintiff submitted its request, Energy informed Plaintiff that the request would be assigned to the Department's Office of the General Counsel and Office of the Chief Human Capital Office. *See* Compl., Ex. B at 2 (ECF No. 1-2). Yet, after nearly a year passed, Energy failed to take any further steps to process Plaintiff's request.

Thus, Plaintiff was forced to file this lawsuit on June 30, 2022, to compel Energy's compliance with its statutory obligations under FOIA. *See* Compl. (ECF No. 1). Once Plaintiff filed this lawsuit, Energy finally began processing the request, issuing its first partial response to Plaintiff on July 29, 2022. *See* Jt. Status Rep. at 2 (ECF No. 12). Although Energy initially resisted processing more than 300 pages per month, *see id.*, Energy subsequently agreed to Plaintiff's request that it process at least 500 pages per month, *see* Jt. Status Rep. at 2 (ECF No. 13). As counsel for Energy confirmed, it viewed this processing rate as an enforceable "commitment to

the Court[.]"  Field Decl., Ex. E (Email from H. Solomon-Strauss to B. Field (Oct. 6, 2022)) (attached hereto as Ex. 1).

On November 1, 2022, Energy issued what it deemed to be its final release. *See* Jt. Status Rep. at 2 (ECF No. 14).  But as Plaintiff explained to Energy, there were various records missing from Energy's production.  *See id.*  Thereafter, Energy agreed to review its records for the missing documents, which it subsequently located and released.  *See* Joint Status Rep. at 2 (ECF No. 15).

After Energy issued this supplemental release, the parties conferred about Energy's processing and Energy agreed to Plaintiff's request for a *Vaughn* index.  *See* Jt. Status Rep. at 2 (ECF No. 16).  Energy produced that index to Plaintiff on April 3, 2023.  *See* Jt. Status Rep. at 2 (ECF No. 17).  At that time, Energy also removed several of its previous redactions and reprocessed several pages it had previously released to Plaintiff.  *See* Field Decl. ¶¶ 22–24; Ding Decl. ¶¶ 4–8 (attached to Field Decl. as Ex. D).

After receiving the *Vaughn* index and the reprocessed records, Plaintiff determined that it would not seek additional relief through dispositive motions practice.  *See* Jt. Status Rep. at 2 (ECF No. 18).  Rather, Plaintiff stated that the only issue remaining was its demand for attorneys' fees and costs.  *See id.*

Thereafter, the parties engaged in extensive negotiations regarding Plaintiff's demand, but they were ultimately unable to reach an agreement.  *See* Jt. Status Reps. (ECF Nos. 19, 20, 21).  On November 1, 2023, Energy provided Plaintiff an offer of judgment, which Plaintiff subsequently rejected.

3

## STANDARD OF REVIEW

Plaintiff is eligible for reasonable attorneys' fees and costs because it substantially prevailed in this FOIA matter. *See* 5 U.S.C. § 552(a)(4)(E)(i). A plaintiff substantially prevails if the plaintiff "obtained relief through either—(I) a judicial order, or an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." 5 U.S.C. § 552(a)(4)(E)(ii)(I)–(II). "[P]laintiffs may be considered prevailing parties for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit." *Edmonds v. Fed. Bureau of Investigation*, 417 F.3d 1319, 1326–27 (D.C. Cir. 2005) (quoting *Farrar v. Hobby*, 506 U.S. 103 (1992)).

Plaintiff, as a substantially prevailing party, is also entitled to reasonable attorneys' fees and costs at the discretion of the court because the "balancing of [four] factors" favors Plaintiff: "(1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct." *Morley v. Cent. Intel. Agency*, 719 F.3d 689, 690 (D.C. Cir. 2013).

## ARGUMENT

Plaintiff is both eligible for and entitled to attorneys' fees and costs in this matter as a prevailing party who provided substantial public benefit through this litigation. And, because Plaintiff's demand for fees is reasonable, the Court should grant its request and award fees and costs to Plaintiff.

I.      **Plaintiff is Eligible to Recover Fees and Costs Because it Substantially
        Prevailed in this Litigation.**

Plaintiff is eligible for fees because it substantially prevailed in this matter.  5

U.S.C. § 552(a)(4)(E)(i).  Here, Plaintiff obtained a significant measure of the relief it

sought—"searches immediately for all records responsive to [its] FOIA request" and

release of those records—through unilateral change in position by Energy.  Compl.

at 6.

Indeed, Plaintiff prevailed by catalyzing Energy's unilateral change in position

concerning Plaintiff's entitlement to a search for and production of responsive

records.  *See Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 524–25 (D.C. Cir.

2011).  This "not particularly high" standard asks whether the litigation "could

reasonably be regarded as necessary" to achieve the relief sought and whether a

"causal nexus" exists between the action and the agency's change in position.  *Nat'l

Sec. Couns. v. Cent. Intel. Agency*, 189 F. Supp. 3d 73, 79–80 (D.D.C. 2016) (quotation

marks and citations omitted); *accord Church of Scientology of Cal. v. Harris*, 653 F.2d

584, 587 (D.C. Cir. 1981); *Am. Oversight v. U.S. Dep't of Just.*, 375 F. Supp. 3d 50, 61

(D.D.C. 2019); *Mobley v. Dep't of Homeland Security*, 908 F. Supp. 2d 42, 47 (D.D.C.

2012).

On this question, courts often focus on the timing of an agency's change in

position to determine whether a causal nexus exists.  For instance, in *National

Security Counselors*, the FOIA request had been pending for several years when the

plaintiff filed its complaint.  189 F. Supp. 3d at 80.  Then, after the complaint was

filed, the agency quickly began producing records.  *Id.*  That timing weighed heavily in favor of finding a causal nexus.  *See id.*

True, "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation."  *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1496 (D.C. Cir. 1984); *but see Pub. Law Educ. Inst. v. U.S. Dep't of Just.*, 744 F.2d 181, 184 n.5 (D.C. Cir. 1984) (noting that the "temporal relation between a[ ] FOIA action and the release of documents *may be taken into account*[.]") (emphasis added).  But Courts in this District routinely conclude that lengthy delays in processing requests satisfy the causal nexus requirement under the catalyst theory.  *See, e.g.*, *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 218 F. Supp. 3d 27, 41–42 (D.D.C. 2016) ("*EPIC III*") (causal nexus established when complaint was filed eight months after FOIA request and records were released only after complaint filed); *Zynovieva v. U.S. Dep't of State*, No. 19-cv-3445-RDM, 2023 WL 2755599, at *6 (D.D.C. Mar. 31, 2023) (denying motion for fees, but noting that a 150-business-day delay was a "close[ ] question"), *appeal docketed,* No. 23-5120 (D.C. Cir. May 31, 2023); *Env't Integrity Proj. v. Gen. Servs. Admin.*, No. 18-cv-0042-KBJ, 2021 WL 3464337, at *6–7 (D.D.C. Aug. 6, 2021) (discussing agency delay).

Indeed, the record here unmistakably shows that Energy "sudden[ly] accelerat[ed] in processing" Plaintiff's FOIA request after Plaintiff filed a complaint, which is clear evidence of the causal nexus.  *See Zynovieva*, 2023 WL 2755599, at *5 (quoting *EPIC III*, 218 F. Supp. 3d at 41).  Although the FOIA request had been pending for nearly one year without any substantive response from Energy, *see*

Compl. ¶¶ 12–19, Energy began processing the request and releasing records within one month of Plaintiff's filing its Complaint, *see* Jt. Status Rep. at 2 (ECF No. 12). Where, as here, "the government simply ignores a FOIA request, its disclosure of the information sought once suit is filed will belie its claim that it would have released the documents without the suit." *Terris, Pravlik & Milian, LLP v. Ctr. for Medicare & Medicaid Servs.*, 794 F. Supp. 2d 29, 38 (D.D.C. 2011) (Facciola, M.J.) (citing *Crooker v. U.S. Dep't of Treasury*, 663 F.2d 140, 142 (D.C. Cir. 1980)).  Rather, such delays in processing the request constitute "effective … den[ial]" of FOIA requests. *Crooker*, 663 F.2d at 142.[1]

Thus, the decision to change course and begin processing the request clearly demonstrates Plaintiff's success here.  Similarly, Plaintiff prevailed because the parties had to engage in extended discussions about Energy's search, which ultimately resulted in Energy unilaterally changing its position with respect to various withholdings only after agreeing to Plaintiff's demand to produce a *Vaughn* index detailing the bases for its withholdings.  *See* Field Decl. ¶ 22.  Had Plaintiff not demanded the *Vaughn* Index, Energy would certainly not have subsequently reviewed its withholdings and determined that it would release additional information.

---

[1] After all, that is precisely what Senator Leahy—the co-sponsor of the OPEN Government Act of 2007—emphasized on the Senate floor: "Under the bill, a FOIA requester can obtain attorneys' fees when he or she files a lawsuit to obtain records from the Government and the Government *releases those records* before the court orders them to do so."  153 Cong. Rec. S15704 (daily ed. Dec. 14, 2007) (statement of Sen. Patrick Leahy) (emphasis added).

For these reasons, Plaintiff has substantially prevailed, obtaining all relief it sought—a search and the production of records.  *See Mobley*, 908 F. Supp. 2d at 48 (concluding that the requester had not substantially prevailed because, having *not received any records*, he had "obtain[ed] only one small piece of the relief [sought] in [the] complaint").  Thus, Plaintiff is eligible for fees as the prevailing party.

## II.   Plaintiff is Also Entitled to Fees and Costs Because the Four-Factor Test Clearly Favors Recovery.

Plaintiff is also entitled to an award of fees and costs because the balance of the relevant factors decisively favors Plaintiff.  In determining whether a prevailing plaintiff is entitled to fees, courts in the D.C. Circuit balance four factors: "(1) the public benefit derived from the case, (2) the commercial benefit to the requester, (3) the nature of the requester's interest in the information, and (4) the reasonableness of the agency's conduct."  *Morley*, 719 F.3d at 690. Each of these factors weighs in Plaintiff's favor.

### A.   The public received substantial benefit through this case.

As the D.C. Circuit has explained, the public benefit factor "requires an *ex ante* assessment of the potential public value of the information requested, with little or no regard to whether any documents supplied prove to advance the public interest." *Morley v. Cent. Intel. Agency*, 810 F.3d 841, 844 (D.C. Cir. 2016). In order to have "potential public value," a request need only have "a modest probability of generating useful new information about a matter of public concern." *Id.* "The public benefit factor considers whether 'the complainant's victory is likely to add to the fund of public information that citizens may use in making vital political choices.'" *Wadelton*

*v. Dep't of State*, No. 13-cv-0412 (TSC), 2018 WL 4705793, at *4 (D.D.C. Sept. 30, 2018) (quoting *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995)). For example, in *Morley v. Central Intelligence Agency*, 894 F.3d 389 (D.C. Cir. 2018), the D.C. Circuit found that the public benefit factor favored the plaintiff "because there was at least a small public benefit from the information sought by Morley." *Id.* at 392.

There can be no debate here that the public received substantial benefit from Plaintiff's request.  As with each incoming administration, there was significant interest in who President Biden would appoint to staff the policymaking roles across the federal government.[2]  Indeed, the public's interest is clear from the significant coverage of Plaintiff's requests for records about recent political appointees.[3]  And Plaintiff developed a website to allow the public to explore the records released by Energy and other departments.  *See* Woke Wagon, https://wokewagon.aflegal.org/. Even now, political appointees at Energy continue to draw public scrutiny.[4]  Because

---

[2] *See* Susan Milligan, *Biden Gets the Obama Band Back Together*, U.S. News & World Report (Dec. 11, 2020), https://tinyurl.com/5n92w7d8; *Joe Biden Has Picked 426 Nominees to Fill Key Roles in His Administration So Far*, Wash. Post (updated Nov. 20, 2023), https://tinyurl.com/2jnhp3ew.

[3] Adam Shaw, *American First Legal launches 'Woke Wagon' database to reveal ties of Biden admin officials,* Fox News (July 20, 2022), https://tinyurl.com/2rvu39sc; Kelsey Koberg, *Database reveals Biden Department of Education's ties to campaigns, unions and liberal think tanks,* Fox News (Aug. 1, 2022), https://tinyurl.com/2wf37wr2; Patrick Hauf, *Biden political appointees to HIV council have 'woke' pasts tied to drag queen story hour, Planned Parenthood*, Fox News (Dec. 19, 2022), https://tinyurl.com/4u48d2ps; Naveen Athrappully, *Legal Group Sues Justice Department for Documents Related to Political Weaponization,* The Epoch Times (Apr. 25, 2023), https://tinyurl.com/36cbs3hx.

[4] *See* Nancy Vu, *John Barrasso Requests Ethics Review Into DOE Official Over Conflicts of Interest Allegations*, Wash. Examiner (Nov. 9, 2023), https://tinyurl.com/nejezzaa; Senator Josh Hawley, *Hawley Calls for DOE Watchdog*

Plaintiff sought the records to inform the public, it did not derive any commercial benefit from this FOIA request or lawsuit.

The second and third entitlement factors plainly favor Plaintiff because this case conferred no commercial benefit on Plaintiff. Plaintiff is "a nonprofit organization working to promote the rule of law in the United States, prevent executive overreach, ensure due process and equal protection for all Americans, and encourage public knowledge and understanding of the law and individual rights guaranteed under the United States Constitution and the laws of the United States." Compl. ¶ 4. Plaintiff furthers this mission "by gathering official information, analyzing it, and disseminating it through reports, press releases, and/or other media[.]" *Id.* And that is precisely what Plaintiff did with the records Energy provided here.[5]

In doing so, Plaintiff received no commercial benefit from this FOIA request. *See Elec. Privacy Info. Ctr. v. Fed. Bureau of Investigation*, 72 F. Supp. 3d 338, 347 (D.D.C. 2014) ("*EPIC I*") (finding "persuasive" EPIC's "conten[tion] that its interests in the records obtained in this case are entirely public-oriented and that it has derived no commercial benefit from its FOIA request or from this suit"). Accordingly, the second and third entitlement factors tilt heavily in Plaintiff's favor.

---

to Investigate Granholm and Agency Staff Following Ethics Violations (Oct. 24, 2023), https://tinyurl.com/y47yemmh.

[5] *Search: Department of Energy,* Woke Wagon, https://tinyurl.com/526kupvf (last visited Nov. 20, 2023).

### B.     Energy's conduct was unreasonable.

Finally, the fourth factor favors Plaintiff because of "the [un]reasonableness of the agency's conduct" in refusing to process and complete a search for records responsive to Plaintiff's FOIA Request. *Morley*, 719 F.3d at 690. This factor contemplates whether the agency's opposition to the relief sought "had a reasonable basis in law[.]" *Davy v. Cent. Intel. Agency*, 550 F.3d 1155, 1162 (D.C. Cir. 2008) (quoting *Tax Analysts v. Dep't of Just.,* 965 F.2d 1092, 1094 (D.C. Cir. 1992)).  It also considers "whether the agency 'had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior.'" *Id.* at 1162 (quoting *LaSalle Extension Univ. v. Fed. Trade Comm'n*, 627 F.2d 481, 486 (D.C. Cir. 1980)).  In *Davy*, the D.C. Circuit explained that the burden of this factor falls on the agency: "The question is not whether [the requestor plaintiff] has affirmatively shown that the agency was unreasonable, but rather whether the agency has shown that it had any colorable or reasonable basis" for its refusal to provide the relief sought.  *Id.* at 1163; *see also Kwoka v. Internal Revenue Serv.,* 989 F.3d 1058, 1065 (D.C. Cir. 2021). Because there is no reasonable basis for Energy's refusal to process Plaintiff's FOIA request, for Energy's failure to conduct an adequate search before Plaintiff identified missing records from Energy's purported "final release," or for the withholdings that Energy subsequently removed, this factor also clearly favors Plaintiff.

## III.   Plaintiff's Requested Fee Award is Reasonable.

### A.     Plaintiff's requested fees for work on this case are reasonable.

Plaintiff seeks an award of reasonable fees and costs in this matter.  To determine whether fees are reasonable, the court must consider: (1) whether the

attorneys charged a reasonable hourly rate and (2) whether the time attorneys logged on the case was reasonable. *Jud. Watch, Inc. v. Dep't of Just.*, 774 F. Supp. 2d 225, 232 (D.D.C. 2011) (citing *Bd. of Trs. of Hotel & Rest. Emps. Local 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998)).

Attorney's fees are calculated based on the "lodestar," which is the number of hours the lawyers reasonably spent on the case multiplied by the lawyers' hourly rates. *Id.* A lawyer's hourly rate is measured by its fair market value, "regardless of whether plaintiff is represented by private or nonprofit counsel." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The fee requester bears the burden of establishing the reasonableness of the hourly rates. *Salazar v. District of Columbia*, 809 F.3d 58, 64 (D.C. Cir. 2015) (citing *Covington v. District of Columbia*, 57 F.3d 1101, 1103 (D.C. Cir. 1995)).

As to rates, Plaintiff relies on the Department of Justice's ("DOJ") Fitzpatrick Matrix, a recently developed matrix of hourly rates for attorneys of various experience levels published by the Civil Division of the U.S. Attorney's Office for the District of Columbia. *See* Field Decl., Ex. A. As DOJ explains, this Matrix "is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover 'reasonable' attorney's fees," including FOIA cases. *Id.* And, where a plaintiff "agrees to payment pursuant to this fee matrix, the U.S. Attorney's Office will not request that a prevailing party offer the additional evidence that the law otherwise requires." *Id.* at 2 n.2. It was designed to provide "a reliable assessment of fees charged for complex federal litigation in the District [of Columbia]." *Id.* at 2.

Confirming their reasonableness, the Fitzpatrick Matrix rates are routinely relied upon by courts in this District to calculate attorneys' fees in a FOIA matter. *See, e.g., Vollmann v. Dep't of Just.*, No. 12-cv-0939-FYP, 2022 WL 1124814, at *7 (D.D.C. Apr. 14, 2022); *Naumes v. Dep't of the Army*, No. 21-cv-1670-JEB, 2023 WL 4350786, at *6 (July 5, 2023). And the same is true outside FOIA. Indeed, courts in this District have concluded that the Fitzpatrick Matrix "presumptively applies" in such litigation. For instance, when a court compared the Fitzpatrick Matrix to the LSI Matrix, the court concluded that the Fitzpatrick Matrix was the correct measure of rates. *See J.T. v. District of Columbia*, Nos. 19-cv-0989-BAH & 22-cv-0091-BAH, 2023 WL 355940, at *14–15 (D.D.C. Jan. 23, 2023); *Louise Trauma Ctr. LLC v. Dep't of Homeland Sec.*, No. 20-cv-1128, 2023 WL 3478479, at *4 (D.D.C. May 16, 2023) (the "Fitzpatrick Matrix rates presumptively apply" in complex federal litigation); *Brackett v. Mayorkas*, No. 17-cv-0988-JEB, 2023 WL 5094872, at *4–5 (D.D.C. Aug. 9, 2023) (reaching a similar conclusion in employment discrimination case).

Indeed, considering that it is DOJ's matrix, it is unsurprising that DOJ frequently points to this Matrix for reasonable rates in FOIA cases and other litigation.[6] For instance, DOJ attorneys recently advocated for Fitzpatrick Matrix

---

[6] It is of no moment that the Fitzpatrick Matrix refers to the U.S. Attorneys' Office for the District of Columbia. *See* Field Decl., Ex. A at 2 n.1. Rather, attorneys from Main Justice litigating components have also applied the rates from the Fitzpatrick Matrix in FOIA litigation. *See, e.g., Elec. Privacy Info. Ctr. v. Internal Revenue Serv.*, No. 18-cv-0902-TJK/GMH, 2023 WL 4892712, at *15 (D.D.C. June 2, 2023) (attorneys from DOJ's Tax Division "[did] not object to any of the hourly fees charged based on that matrix" and the magistrate judge "f[ound] that [the Fitzpatrick Matrix rates] were reasonable" in FOIA lawsuit). The same is true of the Fitzpatrick Matrix's predecessor, the USAO Matrix, which attorneys from DOJ's Federal Programs

rates in a class action lawsuit. *See* Def.'s Resp. to Pls.' Mot. for Final Approval of Class Settlement, *Nat'l Veterans Legal Servs. Prog. v. United States*, No. 16-cv-0745-PLF (D.D.C. Sept. 12, 2023), ECF No. 159 (attached as Ex. 3). And the same is true in recent FOIA litigation, where DOJ lawyers represented to the court that the Fitzpatrick Matrix rates were "reasonable." Opp'n to Mot. for Att'ys Fees & Costs, *WP Co., LLC v. Dep't of Homeland Sec.*, No. 20-cv-1487-TNM (D.D.C. Oct. 25, 2022), ECF No. 42 (attached as Ex. 4). And the court agreed. *See WP Co., LLC v. Dep't of Homeland Sec.*, No. 20-cv-1487-TNM, 2023 WL 1778196, at *4 (D.D.C. Feb. 6, 2023). Similarly, Department lawyers made the same representation in another case recently, stating that the Department does not oppose "using the new Fitzpatrick Matrix to calculate Plaintiff's counsel's hourly rates for years in which Plaintiff's counsel performed the work in this matter[.]" Def.'s Resp. to Pl.'s Notice of Supplemental Authority at 2, 9, *Vollman v. Dep't of Just.*, No. 12-cv-0939-FYP (D.D.C. Jan. 26, 2022), ECF No. 46 (attached as Ex. 5). Although there was a dispute in *Vollman* about *which* rates from the Matrix were applicable, all parties and the Court agreed that the Matrix provided a reasonable standard for determining rates. *See id.*; *see also Vollman*, 2022 WL 1124814, at *7.

Accordingly, as shown in the accompanying declaration, Plaintiff seeks attorneys' fees for work performed in 2022 at $647 per hour, and at $697 per hour for

---

Branch endorsed as being "far more widely accepted." DOJ's Opp'n to Pl.'s Mot. for Fees, *Citizens for Resp. & Ethics in Wash. v. Dep't of Just.*, No. 12-cv-1491-JDB (D.D.C. May 1, 2015), ECF No. 40 (attached as Ex. 2) (quoting *Berke v. Fed. Bureau of Prisons*, 942 F. Supp. 2d 71, 77 (D.D.C. 2013)).

work performed in 2023. Similarly, for work performed by paralegals, Plaintiff seeks $207 per hour for work performed in 2022, and $220 per hour for work performed in 2023. *See* Field Decl. ¶ 6.

As to the hours billed, Plaintiff's work falls into three initial categories: (1) preparing and filing the complaint; (2) handling joint status reports and considering Energy's responses to various questions; and (3) fee negotiations. The D.C. Circuit has held that "the second prong of the equation for calculating a fee award—the reasonableness of hourly rates awarded under fee-shifting statutes—consists of 'at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community.'" *Am. Lands All. v. Norton*, 525 F. Supp. 2d 135, 148 (D.D.C. 2007) (citing *Covington*, 57 F.3d at 1107). To recover, the movant must provide "contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). These records are attached to the accompanying Field Declaration.

1. As to the Complaint, Plaintiff's counsel spent 0.66 attorney hours and 1.48 paralegal hours preparing, finalizing, and filing the Complaint. *See* Field Decl. ¶ 15. There can be no serious debate about the reasonableness of these hours. Indeed, a review of decisions in this District confirms as much. In *American Civil Liberties Union v. Dep't of Homeland Security*, 810 F. Supp. 2d 267 (D.D.C. 2011), the agency objected to the plaintiff having spent 60 hours on the complaint. *Id.* at 280–81. The Court agreed that this was unreasonable but reduced it by only 26.75 hours—

15

awarding fees for 33.25 hours.  *See id.*  Elsewhere, the Court in *Reyes v. U.S. Nat'l Archives & Records Administration*, 356 F. Supp. 3d 155 (D.D.C. 2018), concluded that 10.6 hours was reasonable for drafting the complaint.  *See id.* at 171.  Similarly, the Court in *Hall & Assoc. v. U.S. Environmental Protection Agency*, No. 15-cv-286-RBW, 2016 WL 10746643 (D.D.C. Mar. 7, 2016), concluded that 43 hours was unreasonable for a straightforward complaint, but the Court nonetheless awarded more than 25 hours for work on a "straightforward … complaint [that] bears similarities to complaints recently filed by the plaintiff against the defendant in cases before other members of this Court."  *Id.* at *6–7.  Other examples abound.  *See Elec. Privacy Info. Ctr. v. Fed. Bureau of Investigation*, 80 F. Supp. 3d 149, 158 (D.D.C. 2015) ("*EPIC II*") (reducing to 9.5 hours fee award for time spent on "straightforward, nine-page FOIA complaint, similar to the complaints that EPIC frequently files in FOIA litigation in this Circuit."); *EPIC I*, 72 F. Supp. 3d at 350 (rejecting request to reduce 21.4 hours spent drafting complaint).

On this issue, Judge Bates' decision in *Electronic Privacy Information Center v. Dep't of Homeland Security*, 999 F. Supp 2d 61 (D.D.C. 2013), is particularly instructive.  In that case, the Court "refuse[d] to nitpick 'a charge of 8.5 hours …' for what DHS called 'a 9-page boilerplate complaint for this simple, straightforward FOIA case."  *Id.* at 74–75.  Rather, the court noted that, "[i]f FOIA's statutory requirements as applied to this case were so 'simple' and 'straightforward,' [the agency] might have been better served by complying with them—rather than by

ignoring statutory deadlines and meeting their legal obligations only upon being served with a complaint in federal court." *Id.* at 74.

Accordingly, there can be no dispute that spending 0.66 attorney hours and 1.48 paralegal hours on the Complaint here was reasonable.

2.  The same is true for the time spent reviewing, revising, and finalizing status reports in this case.  As reflected in the accompanying Declaration, Plaintiff seeks fees for time spent on nearly a dozen status reports.  *See* Field Decl. ¶¶ 19–25.  In total, Plaintiff seeks fees for 8.35 attorney hours and 0.6 paralegal hours on this phase of the litigation.  Considering that this amounts to less than one hour per status report, there can once again be no serious dispute about the reasonableness of this demand.

3.  Additionally, Plaintiff seeks fees for the time spent negotiating fees in this case.  In total, Plaintiff seeks fees for 3.08 attorney hours spent on such negotiations.  *See* Field Decl. ¶ 26.  While Plaintiff certainly believes that a resolution should have been reached more quickly, it remains the case that Energy's positions required extensive negotiation.[7]  *See id.*  Thus, it was reasonable in this case for Plaintiff's counsel to spend approximately 3 attorney hours on correspondence and record review for settlement negotiations.

---

[7] Because those discussions were part of confidential settlement negotiations, Plaintiff will not discuss the specific substance of the parties' negotiations.  However, Plaintiff anticipates that Energy will advance the same or similar arguments in its opposition to this motion.

17

4.   In total, Plaintiff seeks $733.38 for the complaint-drafting phase of litigation, $5,578.15 for the status-report phase of litigation, and $2,146.76 for the time spent negotiating settlement.  *See* Field Decl. ¶ 30.  When the filing fee and postage is included, that amounts to $8,876.37.  *See id.*   As the accompanying Field Declaration explains, this demand excludes time spent on various other tasks.  *See id.* ¶ 8.

> **B.   Plaintiff is entitled to fees on fees.**

Finally, Plaintiff is also entitled to recover fees for its work to obtain fees in this matter.  *See* Field Decl. ¶ 28.  "[I]t is settled in this circuit that hours reasonably devoted to a request for fees are compensable[.]" *Brennan Ctr. for Just. v. Dep't of Homeland Sec.*, No. 16-cv-1609-ABJ, 2019 WL 280954, at *5 (D.D.C. Jan. 22, 2019) (quoting *EPIC II*, 80 F. Supp. 3d at 162); *see also Elec. Privacy Info. Ctr. v. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 237 (D.D.C. 2011) ("It is a common practice in this jurisdiction to award fees on fees in FOIA cases.").  Here, Plaintiff spent 13.4 attorney hours on this motion and the accompanying exhibits, and 2.7 paralegal hours on cite checking and finalization for filings.  Accordingly, Plaintiff seeks an additional $10,352 in fees on fees, plus fees for any time spent on the reply.

> ## CONCLUSION

Plaintiff substantially prevailed in this lawsuit when Energy unilaterally changed its position by processing Plaintiff's FOIA request after Plaintiff filed its Complaint.  Additionally, Energy further changed its position when it unilaterally removed various redactions from records it had released.  Plaintiff is thus eligible for attorneys' fees.  Moreover, Plaintiff is entitled to fees because each factor of the

entitlement test favors Plaintiff.   And, because Plaintiff's demand for fees is reasonable, the Court should award Plaintiff $19,228.37 in fees and costs.

November 21, 2023                              Respectfully submitted,

                                              */s/ Brian J. Field*
                                              BRIAN J. FIELD
                                              D.C. Bar No. 985577
                                              SCHAERR | JAFFE LLP
                                              1717 K Street NW
                                              Suite 900
                                              Washington, DC 20006
                                              Tel.: (202) 787-1060
                                              Email: bfield@schaerr-jaffe.com

                                              */s/ Michael Ding*
                                              MICHAEL DING
                                              D.C. Bar No. 1027252
                                              AMERICA FIRST LEGAL FOUNDATION
                                              611 Pennsylvania Ave SE #231
                                              Washington, D.C. 20003
                                              Tel.: (202) 964-3721
                                              Email: michael.ding@aflegal.org

                                              *Counsel for Plaintiff America*
                                              *First Legal Foundation*